FILED

2009 Sep-28  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **CAROLYN S. TITTLE; CST TRUCKING CO.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CV 08-B-2176-J** |
| ) | |
| **DRUMMOND COMPANY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is before the court on plaintiffs' Motion to Remand.  (Doc. 3.)[1] Plaintiffs

contend that this case should be remanded because it does not involve a federal question.

(*Id*. ¶ 3.)  Upon consideration of the record, the submissions of the parties, the arguments of

counsel, and the relevant law, the court is of the opinion that plaintiff's Motion to Remand,

(doc. 3), is due to be granted.

## I. MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction.  Therefore, this court may only hear

cases that the Constitution or Congress has authorized.  A federal court has subject-matter

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the

United States."  28 U.S.C. § 1331.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each
document as it is filed in the court's record.

A defendant seeking to remove a case from state court to federal court has the burden of proving the existence of federal jurisdiction. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Because federal jurisdiction is limited, the Eleventh Circuit has held that cases removed from state court are to be remanded "where federal jurisdiction is not **absolutely** clear." *See Lowe's OK'd Used Cars, Inc. v. Acceptance Insurance Co.*, 995 F. Supp. 1388, 1389 (M.D. Ala. 1998)(citing *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994))(emphasis added). To this end, removal statutes are strictly construed, with all doubts resolved in favor of remand. *Id*. (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996), *cert. denied* 520 U.S. 1162 (1997)). Moreover, all facts alleged in the Complaint are construed in favor of plaintiffs, and all "uncertainties" regarding the substantive state law are resolved in favor of plaintiffs. *Crowe*, 113 F.3d at 1538 (11th Cir. 1997).

## II. <u>STATEMENT OF FACTS</u>

Plaintiffs' Complaint alleges the following facts:

5. The plaintiffs were engaged in hauling coal for the defendant. As an incident to that hauling, the plaintiffs were asked to sign a contract with the United Mine Workers of America (hereinafter "UMWA"), which among other things would obligate these plaintiffs to certain financial obligations to the UMWA and to the UMWA health, benefit, and retirement programs. These obligations would be additional financial obligations to plaintiffs, over and above the fees and payments for hauling.

6. In an effort to induce the plaintiffs to act, defendant DCC [Drummond Coal Company] met with owners/operators and/or their representatives in Sumiton, Walker County, Alabama, at the location of "Paul's Restaurant". At that time, an agent, servant, and employee of

2

[defendant], acting on [its] behalf, and with the apparent authority of [defendant], represented to [plaintiffs] that, if they would enter into this required contract, that [defendant] would assume the additional burden of the contract, and would do those things necessary to allow the plaintiffs to continue to operate in a profitable manner, notwithstanding those additional financial obligations.

7.   In reliance on those representations, the plaintiffs entered into the required contracts, and thereby incurred financial responsibilities arising therefrom.   [Defendant] did, in recognition of and ratification of, these promises, reimburse the plaintiffs for the expenditures arising from this contract on a regular basis over the next several years.

8.   In June, 2000, [defendant] informed the plaintiffs that [it] would no longer be conducting the surface mining operations and would no longer need the trucking services of the plaintiffs.

9.   Irrespective of the cessation of operations, [defendant] continued to pay the costs associated with the subject contract, at least through July 25, 2000.

10.   At some point after July 25, 2000, the plaintiffs received notice from the UMWA 1992 Benefit Plan of outstanding sums owing to them incidental to the subject contract.   In reliance upon [defendant] and their representations, as well as the performance of [defendant] on those obligations up to that time, the plaintiffs called upon [defendant] to perform and fulfill these obligations.   [Defendant] has failed and refused to perform under these obligations.

11.   In addition to the sums demanded by the UMWA 1992 Benefit Plan to date, the plaintiffs have been made aware of sums that are to be due and payable in the future arising out of this same obligation.

12.   [Defendant] was at all times pertinent in possession of superior knowledge and facts in this case, which they misrepresented and/or suppressed from the plaintiffs, which facts [defendant] was under a duty to disclose because of the operative facts and relative sophistication of the parties.

(Doc. 1, Ex. 1 [Complaint] ¶¶ 5-12.)

Plaintiffs' Complaint contains four claims:  (1) breach of contract, (2) fraud, (3) negligence and/or wantonness, and (4) unjust enrichment.  (*Id*. ¶¶ 13-22.)

Defendant timely removed this action on the basis of federal-question subject-matter jurisdiction.  It contends that plaintiffs' claims are preempted by § 514 (a) of the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1144(a), (doc. 1 at 3.) and § 301 of the Labor Management relations Act, 29 U.S.C. § 185, (doc. 1 at 7).

Plaintiffs filed a Motion to Remand, (doc. 3), arguing that their claims were not preempted and, because the parties are not diverse, this court lacked subject-matter jurisdiction.

## III.  DISCUSSION

This court has federal-question jurisdiction, pursuant to 28 U.S.C. § 1331, if plaintiffs' claims are completely preempted by ERISA and/or the LMRA.

> The Supreme Court and [the Eleventh] Circuit have found complete preemption ***only*** under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).  *See Anderson v. H & R Block, Inc*., 287 F.3d 1038, 1042 (11th Cir. 2002); *BLAB T.V*., 182 F.3d at 855.  The Supreme Court has cautioned that complete preemption can be found only in statutes with "extraordinary" preemptive force.  *See Caterpillar* [ *Inc. v. Williams*], 482 U.S. [386,] 393, 107 S. Ct. 2425 [(1987)]; *Metropolitan Life* [*Life Ins. Co. v. Taylor*], 481 U.S. [58,] 65, 107 S. Ct. 1542 [(1987)].  Moreover, that "extraordinary" preemptive force must be manifest in the clearly expressed intent of Congress.  *See Anderson*, 287 F.3d at 1047; *cf. Metropolitan Life*, 481 U.S. at 66, 107 S. Ct. 1542 (finding a clear manifestation of Congress's intent to make causes of action within the scope of section 502 of ERISA removable).  Indeed, in "the absence of explicit direction from Congress," the Supreme Court has indicated its reluctance to find the extraordinary preemptive power necessary for complete preemption.

*Id.* at 64-65, 107 S. Ct. 1542.  Thus, the complete preemption inquiry turns on the question of "whether Congress not only intended for a federal statute to provide a defense to state-law claims, but also intended to confer on defendants the ability to remove a case to a federal forum." *Anderson*, 287 F.3d at 1041.

> In summary, ***a federal law may substantively displace state law under ordinary preemption but lack the extraordinary force to create federal removal jurisdiction under the doctrine of complete preemption***.  If no other grounds for federal jurisdiction exist in such cases, then it falls to the state courts to assess the merits of the ordinary preemption defense.  *See Caterpillar*, 482 U.S. at 398 n.13, 107 S. Ct. 2425 (leaving the merits of ordinary preemption arguments to be addressed first by the state court).

*Geddes v. American Airlines, Inc.*, 321 F.3d 1349, 1353 (11th Cir. 2003)(emphasis added).

In a prior case involving defendant's promise to other coal haulers, this court "conclude[d], because neither § 301 of the LMRA nor ERISA preempt[ed] plaintiffs' state-law claims [based on defendant's failure to perform as promised], the court lack[ed] federal subject-matter jurisdiction under § 1331," and remanded the case to the Circuit Court of Walker County.  *Atkinson v. Drummond Company, Inc.*, CV 02-TMP-2064-J, doc. 19 at 7 (Acker, J.).  The court finds the *Atkinson* opinion to be persuasive.

## A.  ERISA

According to the Eleventh Circuit, "ERISA superpreemption exists only when the 'plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a).'"  *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999)(quoting *Whitt v. Sherman*

*Intern. Corp.*, 147 F.3d 1325, 1330 (11th Cir. 1998)).  The *Butero* court established four

elements that must be satisfied to demonstrate complete ERISA preemption:

> 1.  "First, there must be a relevant ERISA plan." *Id.* (citing *Whitt*, 147 F.3d at 1330; *Kemp v. International Business Machs. Corp.*, 109 F.3d 708, 713 (11th Cir. 1997)).
>
> 2.  "Second, the plaintiff must have standing to sue under that plan." *Id.* (citing *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1350 n.3 (11th Cir. 1998)).
>
> 3.  "Third, the defendant must be an ERISA entity." *Id.* (citing *Engelhardt*, 139 F.3d at 1350 n.3; *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997); *Morstein v. National Ins. Servs., Inc.*, 93 F.3d 715, 722 (11th Cir. 1996)(en banc)).
>
> 4.  "[Fourth], the complaint must seek compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan. *Id.* (citing *Engelhardt*, 139 F.3d at 1354; *Franklin*, 127 F.3d at 1029).

Under the second element – plaintiffs' standing to sue under the ERISA plan, the

*Butero* court held that, because "[s]ection 1132(a) grants employers no cause of action for

damages," ***an employer*** "has no standing to assert a statutory cause of action," and its state-

law claims "are not superpreempted." *Butero*, 174 F.3d at 1212 (citation omitted).  As to the

third element, the *Butero* court held that a plaintiff's claims are not preempted, even

defensively, "when the ***defendant*** is 'a non-ERISA entity' and the claims do not 'affect

relations among principal ERISA entities as such.'" *Id.* (quoting *Morstein*, 93 F.3d at 722).

Defendant contends that plaintiffs' claims are completely preempted because the "UMWA 1992 Benefit Plan" is a qualified ERISA plan.  (Doc. 1 at 2 and Ex. 1 [Complaint] ¶¶ 10-11; *see also* doc. 8 at 8.)[2]  It argues:

> In this case Plaintiffs' Complaint contains four state law claims and makes no mention of ERISA.  However, the Complaint extensively discusses the UMWA 1992 Benefit Plan – a plan specifically denominated by statute as an ERISA multiemployer plan – and the relief sought by the Complaint is for Drummond to assume the Plaintiffs' alleged liability to the UMWA 1992 Benefit Plan.  All of the Complaint's claims lead back to the UMWA 1992 Benefit Plan.  The Complaint's clear connection to this ERISA plan and its request for relief "related to" this covered plan requires complete preemption of all of plaintiff's state law claims.  Plaintiffs' Memorandum of Law offers no argument in opposition to Drummond's removal on the basis of ERISA. For this reason alone, Plaintiffs' Motion to Remand is due to be denied.[3]

---

[2]Defendant contends:

The UMWA 1992 Benefit Plan is a Congressional creation and arose from the passage of the Coal Act which was designed to shore up a sagging benefit system for retired coal miners.  *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 163-4 (3rd Cir. 1999).  The Coal Act states that "As soon as practicable after the enactment date, the settlers shall create a separate private plan which shall be known as the United Mine Workers of America 1992 Benefit Plan" and also states that this newly created plan shall be an ERISA-governed, multiemployer plan. 26 U.S.C. § 9712(a)(1), (2).

(Doc. 8 at 8.)  The court does not have the benefit of reviewing the actual agreement between the union and plaintiffs.  However, for purposes of this decision, the court assumes that the agreement created an obligation for plaintiffs to contribute to the "UMWA 1992 Benefit Plan," which is an ERISA plan.

[3]The court notes that the preemption issues concerns a matter of the court's subject matter jurisdiction which the court has a duty to determine – whether or not the plaintiffs object or oppose.  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005)("A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.  Indeed, it is well settled

However, aside from the Plaintiffs' complete failure to address the ERISA
issue Drummond is still entitled to prevail as ERISA preempts all of Plaintiffs'
claims.

(Doc. 7 at 7-8 [footnote added].)  Defendant argues that plaintiff's claims are an improper

attempt "to shift their alleged ERISA liability to [defendant]" by rewriting the plan to make

defendant "liable for all plan contributions." (*Id*. at 13-14.)  The court disagrees.

[Plaintiffs'] role on ERISA's stage [are] "employer[s]." *See* 29 U.S.C.
§ 1002(5). Section 1132(a) grants employers no cause of action for damages.
*See* 29 U.S.C. § 1132(a).[4]  [Plaintiffs] thus [have] no standing to assert a

_____

that a federal court is obligated to inquire into subject matter jurisdiction sua sponte
whenever it may be lacking.")(quoting *University of South Alabama v. American Tobacco
Co.*, 168 F.3d 405, 410 (11th Cir. 1999)).

[4]Section 1132(a) provides the following causes of action:

A civil action may be brought –

(1)  by a participant or beneficiary –

    (A)   for the relief provided for in subsection (c) of this section
[administrator's refusal to supply requested information], or

    (B)  to recover benefits due to him under the terms of his plan, to
enforce his rights under the terms of the plan, or to clarify his rights to
future benefits under the terms of the plan;

(2)   by the Secretary, or by a participant, beneficiary or fiduciary for
appropriate relief under section 1109 of this title [proscribing breach of
fiduciary duties];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
which violates any provision of this subchapter or the terms of the plan, or (B)
to obtain other appropriate equitable relief (i) to redress such violations or (ii)
to enforce any provisions of this subchapter or the terms of the plan;

(4)  by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [requiring the provision of benefit statements];

(5)  except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

(6)  by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), or (9) of subsection (c) of this section or under subsection (i) or (l) of this section;

(7)  by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title);

(8)  by the Secretary, or by *an employer* or other person referred to in section 1021(f)(1) of this title [requiring a plan funding notice], (A) to enjoin any act or practice which violates subsection (f) of section 1021 of this title, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection;

(9)  in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit under such plan constitutes a violation of part 4 of this title or the terms of the plan, by the Secretary, by any individual who was a participant or beneficiary at the time of the alleged violation, or by a fiduciary, to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by such insurance contract or annuity, plus reasonable prejudgment interest on such amounts; or

(10)  in the case of a multiemployer plan that has been certified by the actuary to be in endangered or critical status under section 1085 of this title, if the plan sponsor –

(A)  has not adopted a funding improvement or rehabilitation plan

statutory cause of action.   See *Engelhardt*, 139 F.3d at 1351.   Hence, [plaintiffs'] claims are not superpreempted.

*Butero*, 174 F.3d at 1212.  Likewise, plaintiffs are considered employers under the Plan; they have no standing to seek relief from defendant under § 1132.  Defendant is not a party to the Plan.  This case concerns only plaintiffs' claims against defendant, who is not a party to the collective bargaining agreement between plaintiffs and the union.  Defendant is not an ERISA entity under the plan.  Moreover, a judgment in this case would "not affect relations among principal ERISA entities as such."  *Morstein*, 93 F.3d at 722.

The *Atkinson* court held:

Under the facts alleged by plaintiffs, Drummond promised to pay plaintiffs' CBA-related expenses in 1988, ***before*** the plaintiffs agreed to enter[ ] into the CBA and long before the 1992 Coal Act was passed.  The expenses Drummond promised to reimburse as "related to" the 1992 ERISA Plan only because they are CBA-related expenses.  Plaintiffs' claim[ ] that Drummond agreed to reimburse these expenses[; they] do not seek any declaration about

---

under that section by the deadline established in such section, or

(B)   fails to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section,

by ***an employer*** that has an obligation to contribute with respect to the multiemployer plan or an employee organization that represents active participants in the multiemployer plan, for an order compelling the plan sponsor to adopt a funding improvement or rehabilitation plan or to update or comply with the terms of the funding improvement or rehabilitation plan in accordance with the requirements of such section and the funding improvement or rehabilitation plan.

29 U.S.C. § 1132(a)(emphasis added).

10

the benefits or the way in which the Benefit Plan works[. T]hey simply seek to hold Drummond to the promise it made to reimburse these expenses.  The fact that they arise from an ERISA Plan is no more important than if Drummond had agreed to reimburse plaintiffs fore the costs of insurance coverage or a performance bond.

. . .  If plaintiffs prevail on their state-law claims against Drummond reference to the CBA and its ERISA-related expenses to determine damages is not enough to establish ERISA preemption.  Drummond is not an ERISA entity with respect to plaintiffs' claims; it is merely a contractor that allegedly agreed to pick up plaintiffs' extra expenses incurred due to *plaintiffs'* involvement with the CBA.  Plaintiffs do not seek to enforce any ERISA rights or benefits with respect to Drummond, but only to collect the reimbursement of expenses Drummond allegedly promised.  Here, plaintiffs' claims are too remotely and tenuously connected to the ERISA provisions of the CBA to come within ERISA's preemptive scope.

*Atkinson*, doc. 19 at 6-7 (emphasis in original).

Because plaintiffs have no standing to sue under § 1132, defendant is not an ERISA entity, judgment in this case will not affect the relationship among the principal ERISA entities, plaintiffs' claims against defendant are not completely preempted by ERISA. Therefore, ERISA superpreemption does not provide a federal-question basis for defendant removal.

**B. LMRA**

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)(quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3 (1987) and citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).  "[A]s long as the state-law claim

11

can be resolved *without interpreting the agreement* itself, the claim is "independent" of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988)(emphasis added).

Plaintiffs' claims – (1) breach of contract, (2) fraud, (3) negligence and/or wantonness, and (4) unjust enrichment – are not founded directly on plaintiffs' collective bargaining agreement with the union, and each claim can be resolved without interpreting the collective bargaining agreement between plaintiffs and the union. Therefore, plaintiffs' claims are not completely preempted by § 301 of the LMRA.

**1. Breach of Contract**

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)(citing *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala.1999)). Clearly, this claim, based on the alleged agreement reached at Paul's Restaurant, will not turn on the *interpretation* of any part of the plaintiffs' agreement with the union.

"In its cases on § 301 preemption, the Supreme Court has distinguished those which require interpretation or construction of the CBA from those which only require reference to it. An otherwise independent claim will not be preempted if the CBA need only be consulted during its adjudication." *Trustees of Twin City Bricklayers Fringe Ben. Funds v.*

*Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006)(citing *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994)).  The Supreme Court has held that "when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301."  *Livadas*, 512 U.S. at 125 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988)).[5]

Plaintiffs may prove that defendant breached its agreement to reimburse them for payments required under the CBA without interpretation of the CBA.  Plaintiffs allege that defendant agreed to pay additional obligations incurred by plaintiffs because they signed the collective bargaining agreement with the union.   (Doc. 1, Ex. 1 [Complaint] ¶ 6.) Additionally plaintiffs allege that defendant actually reimbursed these payments for a number

---

[5]The *Lingle* court noted:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand.  Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement.  In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988).

13

of years.  (*Id*. ¶ 7.)  Assuming these facts are true, there appears to be no need to "interpret"

the CBA, although it may be "looked to" to determine the amount of damages.

### 2.  Fraud

"Under Alabama law, to recover on a claim of fraudulent misrepresentation, a plaintiff

must establish four elements: (1) a false representation (2) concerning a material existing fact

(3) that is justifiably relied upon by the plaintiff (4) who was damaged as a proximate result."

*Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 786 (11th Cir. 2005)(citing *Ex parte*

*Ford Motor Credit Co.*, 717 So. 2d 781, 788 (Ala. 1997); Ala. Code § 6-5-101).  "To prevail

on a promissory fraud claim . . ., one based upon a promise to act or not to act in the future,

two additional elements must be satisfied: (5) proof that at the time of the misrepresentation,

the defendant had the intention not to perform the act promised, and (6) proof that the

defendant had an intent to deceive."  *S.B. v. Saint James School*, 959 So. 2d 72, 101 (Ala.

2006)(quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160

(Ala. 2003)(quoting *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala.1988))).

Plaintiffs allege that defendant represented it would "assume the additional burden of

the contract" between plaintiffs and the union."  (Doc. 1, Ex. 1 [Complaint] ¶ 6.)  They

contend that they relied on defendant's promise and entered into the contract with the union

and, thereby, incurred additional financial obligations.  (*Id*. ¶ 7.)  Although defendant initially

acted in conformity with the alleged representation and paid the additional financial

14

obligations incurred by plaintiffs' as a result of signing the CBA with the union, defendant has since stopped reimbursing plaintiffs.  (*Id*. ¶¶ 9-10.)

The court finds, based on the allegations in the Complaint, that interpretation of the CBA between plaintiffs and the union is not necessary to the resolution of plaintiffs' fraud claim.  Therefore, this claim is not completely preempted by § 301 of the LMRA.

### 3.  Negligence and/or Wantonness

"Under Alabama law, 'in order to prove a claim of negligence a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff.'"  *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1346 (11th Cir. 2007)(quoting *Zanaty Realty, Inc. v. Williams*, 935 So. 2d 1163, 1167 (Ala.2005)).  In Alabama, "'Wantonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.'"  *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) (quoting Ala. Code 1975, § 6-11-20(b)(3)).

Plaintiffs allege that defendant "failed to exercise reasonable and ordinary care in the operation of its business."  (Doc. 1, Ex. 1 [Complaint] ¶ 19.)[6]  The court finds that interpretation of the CBA between plaintiffs and the union is not necessary to the resolution

---

[6]Plaintiffs have not alleged the elements of their negligence and/or wantonness claim. However, the court need not consider the merits of such claim to determine whether the claim is completely preempted by the LMRA.  *See Waldrup v. Hartford Life Ins. Co*, 598 F. Supp. 2d 1219, 1225 (N.D. Ala. 2008)(citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

of plaintiffs' negligence and/or wantonness claim.  Therefore, this claim is not completely preempted by § 301 of the LMRA.

### 4.  Unjust Enrichment

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation. *Portofino Seaport Village, L.L.C. v. Welch*, 4 So.3d 1095, 1098 (Ala. 2008)(citing *American Family Care, Inc. v. Fox*, 642 So. 2d 486, 488 (Ala. 1994)).

Plaintiffs' Complaint alleges that defendant has been unjustly enriched by its failure to pay plaintiffs' obligations under their agreement with the union.  (Doc. 1, Ex. 1 [Complaint] ¶¶ 6-11, 21.).  The court finds that interpretation of the CBA between plaintiffs and the union is not necessary to the resolution of plaintiffs' unjust enrichment claim. Therefore, this claim is not completely preempted by § 301 of the LMRA.

As set forth above, plaintiffs' claims against defendant are neither "founded directly on rights created by collective-bargaining agreements," nor "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc.*, 482 U.S. at 394.  The *Atkinson* court made similar findings:

> There is no question that plaintiffs' state-law claims are "independent of the CBA and federal law.  They allege that Drummond entered into an indemnity agreement with them to reimburse them for additional costs and expenses they were to incur by virtue of entering into the CBA with the Union.  Plaintiffs assert that the only reason they agreed to enter into the CBA was because Drummond said it would cover their costs in doing so.  Whether it is breach

of contract or promissory estoppel or fraud, the nature of the claims asserted by plaintiffs is entirely independent of federal law and requires no analysis or interpretation of the meaning of the terms of the CBA.  The elements of Drummond's liability, if any, will be found in state law, not federal law or the CBA, and this does not change merely because the CBA may be referred to or consulted for calculation of damages.  It is not necessary to interpret any provision of the CBA to determine the purely factual question whether Drummond promised to indemnify plaintiffs for the costs they incurred by agreeing to be a party to a CBA.

*Atkinson*, doc. 19 at 4-5 (internal citations omitted.)

This court finds that plaintiffs' claims are not completely preempted by § 301 the LMRA.

Because plaintiffs' claims are not completely preempted by ERISA or the LMRA, this court lacks federal-question jurisdiction and this case is due to be remanded.

## CONCLUSION

Based on the foregoing, the court finds that it lacks subject-matter jurisdiction based on federal-question jurisdiction.  An Order granting plaintiffs' Motion to Remand and remanding this action to the Circuit Court of Walker County, Alabama, will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 28th day of September, 2009.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE